# EXHIBIT "C"

## ASSIGNMENT OF RIGHTS AGREEMENT

AGREEMENT, made as of October ___, 2004, among David L. Greenstein ("David"), Steven Greenstein ("Steven"), Greenco Enterprises, Inc. ("Greenco"), a Delaware corporation, and Homestead Holdings, Inc. ("HHI" or "Assignee"), a Delaware corporation.

### W I T N E S S E T H:

WHEREAS, David, Steven and Greenco entered into an agreement ("Acquisition Agreement") dated as of September 8, 2004, as amended October [__], 2004, for the acquisition of certain assets, subject to certain liabilities, of Homestead Fabrics Ltd. ("Homestead"), a company incorporated under the laws of England and Wales, with Homestead and its majority shareholder, Broome & Wellington ("BW"), a partnership organized under the laws of England and Wales; and further

WHEREAS, David, Steven and Greenco desire to assign all of their right, title and interests under the Acquisition Agreement, together with certain obligations, to HHI, and HHI desires to assume such right, title and interests, together with such obligations.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and other good and valuable consideration, the adequacy, sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.  David, Steven and Greenco each hereby transfers, conveys and assigns to the Assignee all of his/its right, title and interest in the Acquisition Agreement, subject to the assumption by HHI of all of the obligations of David, Steven and Greenco, thereunder, and Assignee hereby takes as assignee and successor all such right, title and interest, subject to all such obligations.

2.  This Agreement shall be construed and interpreted and the rights of the parties hereto shall be determined in accordance with the laws of England and Wales, without giving effect to any choice of law or conflict provision or rule that would cause the laws of any other jurisdiction to be applied.

3.  A person who is not a party to this Agreement may not enforce any of its terms under the Contracts (Rights of Third Parties) Act 1999.

4.  No supplement, modification or waiver of this Agreement shall be binding unless executed in writing by the party to be bound thereby, and no waiver of any of the provisions of any of the foregoing shall be deemed or shall constitute a waiver of any other provision thereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

5.  All references to the plural herein shall also mean the singular and to the singular shall also mean the plural, in each case, as applicable; all references to the masculine, feminine and neuter shall also mean each of the other genders, as applicable.

6. In the event that any one or more of the provisions contained in this Agreement or in any other instrument referred to herein, shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement or any other such instrument.

7. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have duly executed this Assignment the day and year first above written.

[Signature Pages To Follow on Following Pages]

**ASSIGNORS:**

_____
David L. Greenstein

Steven [signature]

-4-

GREENCO ENTERPRISES, INC.


By: _____
David L. Greenstein, President

ASSIGNEE: HOMESTEAD HOLDINGS, INC.

By: _____
David L. Greenstein, President

# EXHIBIT "D"

FORM B10 (Official Form 10) (04/05)

| UNITED STATES BANKRUPTCY COURT | DISTRICT OF Nevada | PROOF OF CLAIM |
|---|---|---|

**Name of Debtor:** Homestead Holdings, INC
**Case Number:** 06-50142

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Name of Creditor** (The person or other entity to whom the debtor owes money or property): Broome and Wellington

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

**Name and address where notices should be sent:** Silverberg Stonehill Goldsmith & Haber PC., 111 West 40th Street, New York, NY 10018 Att: Jay Silverberg

☑ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

**Telephone number:** 212-730-1900

RECEIVED AND FILED
2006 MAR 29 AM 10:40
UNITED STATES BANKRUPTCY COURT
PATRICIA GRAY, CLERK

THIS SPACE IS FOR COURT USE ONLY

**Account or other number by which creditor identifies debtor:**

Check here ☐ replaces  ☐ amends  a previously filed claim, dated:_____

1. **Basis for Claim**
   - ☐ Goods sold
   - ☐ Services performed
   - ☐ Money loaned
   - ☐ Personal injury/wrongful death
   - ☐ Taxes
   - ☒ Other  Contract claim
   - ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
   - ☐ Wages, salaries, and compensation (fill out below)
     Last four digits of SS #: _____
     Unpaid compensation for services performed
     from _____ to _____
       (date)     (date)

2. **Date debt was incurred:** On or about October 2004

3. **If court judgment, date obtained:**

4. **Total Amount of Claim at Time Case Filed:** $ 7,018,710.00
   (unsecured)  (secured)  (priority)  $ 7,018,710.00 (Total)

   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. **Secured Claim.**
   ☐ Check this box if your claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
   ☐ Real Estate  ☐ Motor Vehicle
   ☐ Other_____
   Value of Collateral: $_____
   Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

6. **Unsecured Nonpriority Claim** $ 7,018,710.00
   ☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

7. **Unsecured Priority Claim.**
   ☐ Check this box if you have an unsecured priority claim
   Amount entitled to priority $_____
   Specify the priority of the claim:
   ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
   ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
   ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
   *Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8.

8. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

9. **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

10. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

**Date:** 3/28/06

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): Haber PC., as Counsel
Silverberg Stonehill Goldsmith & Haber PC.
By: Jay Silverberg

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# EXHIBIT "E"

# Zatman & Co
Solicitors

30 March 2006

Our Ref: DIJ EF 250085
Your Ref:
e mail: david@zatman.com

To:     Greenco Enterprises Co
        David Greenstein
        Steven Greenstein

**By e-mail:**      **david.greenstein@londonfog.com**
                    **steven.greenstein@londonfog.com**
                    **marvt@pacifictrail.com**

Dear Sirs

### Re Sale Agreement Dated 8 September 2004 (As Amended)

We are instructed by Homestead Fabrics Ltd (H Ltd) and Broome & Wellington (BW) in connection with the dispute which has arisen in connection with the due performance by Greenco Enterprises Co Inc (G Co) under the above named agreement. This correspondence has been approved by both Junior and Leading Counsel. For ease of reference the foregoing abbreviations will be adopted throughout the terms of this letter.

*Background*

The background of this matter is well known to you. It has been recited within correspondence issued on behalf of our clients by Mr Joshua Rowe. Nonetheless, and for the avoidance of doubt, we set out below the salient facts, namely:

1.  In or about July 2004, a decision was made by Messrs Greenstein to secure the acquisition of the undertaking formerly conducted on behalf of H Ltd in connection with, inter alia, the United States market.

2.  Following negotiation it was agreed that such undertaking would be acquired by means of a going concern as recorded within the terms of an agreement document dated 8 September 2004 ("the Agreement") (enclosure 1).

1 The Cottages, Deva Centre, Trinity Way, Manchester M3 7BE  Telephone: 0161-832 2500  Fax: 0161-834 4826
E-mail: mail@zatman.com  DX 14321 Manchester 1

ANDREW B ZATMAN B.A. (Hons) M.B.A.   ANSELM SHORE LL.B   DAVID I JOSEPH LL.B   DANIEL A BERGER LL.B   DOV BLACK LL.B   PAUL S STEDMAN LL.B

Regulated by the Law Society

3. The regime anticipated and provided for within the Agreement was adopted to ensure that the total purchase price payable to our clients was achieved over a period of time, beginning with the commencement date and ending with the ultimate acquisition or disposal of the Herkimer Warehouse facility. It is common ground that without this regime, G Co (and/or its alter ego in the form of Messrs Steven and David Greenstein) would not have been able to generate the necessary capital required for the transaction.

4. The Agreement was the subject of consensual amendment ("the Amendment") (enclosure 2) on 30 October 2004. The effect of the Amendment was, inter alia, to vary the dates upon which completion was to be achieved and accommodate the provision of a Funding Payment. The Amendment was necessary to provide clarification to the Agreement. It did not otherwise trespass on the substantive obligations adopted by G Co or Messrs Greenstein as guarantors.

5. As at the date of execution of the Amendment two further documents were provided and endorsed on behalf of G Co and Messrs Greenstein. Copies of these documents are attached (enclosure 3 and 4).

6. No further variation has been adopted or agreed between the parties. Further, we note that within the course of an Opinion provided by your own attorneys, the authenticity of these arrangements was confirmed.

7. In consequence of the default on the part of G Co (and thus Messrs Greenstein qua Guarantors) notice has been served. From subsequent correspondence, it is clear that such notice has been received.

8. In consequence of the defaults referred to within the course of this letter and in accordance with the provisions of clause 10 of The Amendment, our clients are released from the release and waiver previously granted to Messrs Greenstein in connection with pre contractual conduct. Accordingly, and inter alia, by email dated 10 February 2006, our clients have intimated their intention to embark upon separate proceedings in relation to breach of fiduciary duty and related causes of action. Such causes of actions are not addressed within the course of this letter.

*Clarification*

Before turning to the detail of the obligations arising under the Agreement we would remind you that all rights and obligations arising under these arrangements are to be determined in accordance with English Law, and, as expressly provided for, are subject to the exclusive jurisdiction of the English Courts.

It is also common ground that as at the date of execution of the Agreement, the parties had utilised a Balance Sheet analysis, within which allowance was made, inter alia, for non-recovery of all HMST receivables forming the subject matter of the transfer, in that the book value of the same was subject to a discount. Equally, we note that those acting on behalf of G Co have made reference to the terms of this document in relation to other financial matters detailed therein and have done so in order to confirm their understanding of the Agreement and its consequences (e.g. email from Tim Hughes to Jorn Christensen dated 10 January 2005 and that dated 12 November 2004 from "Marv"). However, for all other purposes relative to

2

the interpretation of the Agreement, you have chosen to disregard the document. You will appreciate that it does not lie within the gift of either party to "cherry pick" the documentation or provisions by reference to which the rights and obligations of the parties fall to be assessed. A document is applicable and relevant or it is not. We say that you need to clarify the status of this document and the basis for your contention that it is determinative of the rights between the respective parties.

### *The Dispute(s)*
In addition to the documents referred to above, we have been provided with copies of emails passing between the various companies, Messrs Greenstein and our clients.

From such documentation, it is apparent that you have defaulted in your obligations from a very early stage, and insofar as obligations have been honoured at all, such have been secured only following significant delay and increased pressure from our client for the default in question to be rectified. Notwithstanding that position, it is only recently that you have sought to suggest to our clients that you have in fact discharged your primary obligations under the Agreement. For reasons, which appear below, our client does not accept that proposition.

As matters stand you have raised a number of contentions in connection with:

1. The treatment of charge-backs, markdowns and commissions.

2. The extent of your obligations in connection with the HMST Inventory.

3. The status of the inter-company account(s) and the accuracy of our client's own accounting figures.

4. The remaining obligations in connection with the purchase consideration payable under the Agreement.

Before turning to these matters, we note that following requests our client provided access to its financial and management records to your appointed agent. Despite the provisions of access and supporting information, nothing more was heard in respect of that issue. We pause to observe that such a sequence of events is nothing short of remarkable since at one and the same time as alleging that you have not been given access to such financial information, you seek to make positive assertions as to the accuracy or otherwise of the details actually provided.

### *The Obligations*
Turning to the core obligations agreed between the parties and recorded within the course of the documents previously referred to:

1. The purchase of the undertaking was to be achieved inter alia by payment of the Aggregate Amount of $27 million. This sum represented the amount payable after the inter-company adjustments. The origin of the funds required to discharge that liability were addressed and the sums payable were to amount to the Aggregate Amount (clause 5).

3

2.  The only credits intended to be afforded to G Co in respect of the Aggregate Amount are recited. They include the non-refundable deposit and the ultimate sale proceeds referable to the disposal of the Herkimer Warehouse facility. (cl 5 (i) – (iii) inclusive).

3.  Unless and until the total aggregate payments had reached the level of $23 million, G Co would continue to pay interest to our clients. A like obligation arose in respect of $27 million in the event that G Co was no longer in occupation of the Herkimer Warehouse facility [cl 7].

4.  Insofar as the payments received between September 2004 and September 2007 did not equate to the Aggregate Amount of $27 million, the difference between the sums paid and the Aggregate Amount would thereby fall due for payment [cl 9].

5.  In consideration of occupation of the Herkimer Warehouse facility, G Co would pay to H Ltd the sum of $300,000 per annum as compensation for depreciation. Such sums would cease to be payable upon the Aggregate Amount of $27 million having been achieved [Amendment cl 6].

Again, we note that you have not at any stage contended that the terms of the documentation executed on behalf of these companies is in any manner inaccurate.

*Chargebacks etc*
We understand from your correspondence that you say that the sum payable to our client pursuant to clause 5 of the Agreement is subject to deduction in respect of charge-backs and markdowns and/or that where such charge-backs and markdowns have occurred, you are entitled to be given credit in respect of them, so as to reduce the actual sum required to be paid in discharge of the Aggregate Amount.

We reject this proposition. There is no legal basis for it. Clause 5, when read in its entirety is manifestly intended to identify the sum payable on the one hand and credits to be permitted on the other; the credits being the subject of an express recital in the subordinate clauses 5 (i) to (iii) inclusive.

Mr Rowe clearly states in his correspondence that some chargebacks and markdowns have arisen or been incurred without the authority of G Co or BW. Our client does not resile from that position. Accordingly, if and insofar as you seek credit in respect of these charge-backs and markdowns (and without prejudice to the points made in connection with the interpretation of the Agreement) you will be put to strict proof of the same, including but not limited to their validity.

*HMST Inventory.*
It is apparent from your correspondence that you consider G Co entitled to dispose of the stock and goods comprised in the HMST Inventory upon a forced sale or auction basis. You purport to justify your interpretation on this issue by reference to the financial impact on G Co in retaining those goods.

We refer you to clause 4 of the Agreement and draw your attention to the fact that this provision was unaffected by the Amendment. Clause 4 makes plain that G Co has been appointed to and accepted the obligations of agent in respect of the HMST receivables and

4

the HMST Inventory and is under an obligation to recover "optimal value" in respect of both. There is nothing within the text of that provision to support your interpretation of "optimal value" or for that matter to qualify the meaning of that term.

Your interpretation is absurd when viewed within the context of clause 4 and the adoption of agency responsibilities. The law of agency in England imposes a duty so as to safeguard and protect the interests of H Ltd, not as you allege, G Co. There is no basis for any contrary reading of this provision. We are certain that a Court will come to a like view.

### *The status of the inter-company account(s) and the accuracy of our clients own accounting figures.*

Our clients have provided you with detailed analysis of the inter-company position. You have been given every opportunity to verify the same but have chosen not to do so. The Court will draw its own conclusions as to why this is the case.

Our client's position is set out in their letter of 27 February 2006 to Mr David Greenstein. There has been no substantive response. From the figures supplied to you it is clear that the threshold of $23 million has not been reached and that you are $2.9m shy of that target.

### *The remaining obligations in connection with the purchase consideration payable under The Agreement.*

We are content that you remain in breach of your obligations under the terms of the Agreement and are in default as follows.

The current projected inter-company balance to 31 March 2006 stands at $21,174,703.46 from which is to be deducted the following outstanding balances:

1. Overdue interest of $627,698.67 for the period 1 April 2005 to 31 March 2006.

2. Unpaid invoices of $550,993.62 projected to 31 March 2006.

3. Interest on unpaid invoices of $14,720.45 to 31 March 2006.

The inter-company balance is therefore $19,981,290.72 resulting in a shortfall of $7,018,709.28.

Unless such default is made good within the period of 7 days from the date of this letter, proceedings will be initiated as against G Co and/or Messrs Greenstein qua guarantors without further reference.

This letter is written by way of formal letter before action. It is an important document and you are strongly advised to take appropriate legal advice in connection with its contents.

Yours faithfully

Zatman & co Solicitors
*Encs*

5

# EXHIBIT "F"

Stephen R. Harris, Bar No. 1463
BELDING, HARRIS & PETRONI, LTD
417 West Plumb Lane
Reno, Nevada 89509
Telephone: 775-786-7600
Facsimile: 775-786-7764
Email: steve@renolaw.biz

Alan D. Smith, WSBA No. 24964
Brian A. Jennings, WSBA No. 32509
Justin L. Moon, WSBA No. 36981
PERKINS COIE LLP
1201 Third Avenue, 48th Floor
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
Email:   ADSmith@perkinscoie.com
         BJennings@perkinscoie.com
         JMoon@perkinscoie.com

Attorneys for Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| In re | Case Nos. 06-50140 through 06-50146<br>Administratively consolidated under: |
|---|---|
| PTI HOLDING CORP., a Nevada corporation,<br><br>Debtor. | CASE NO. 06-50140<br><br>OBJECTION TO CLAIM<br>(Claim No. 1 – Broome & Wellington)<br><br>Hearing Date:  June 1, 2006<br>Hearing Time:  1:00 p.m. |

COMES NOW Debtor and debtor in possession Homestead Holdings, Inc. ("HHI"), one

of the affiliated debtors and debtors in possession in these proceedings (collectively, the

OBJECTION TO BROOME & WELLINGTON
CLAIM - 1

[35981-1100-000000/HHI Objexn to B&W Clm.DOC]

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

"Debtors"),[1] and hereby objects to the proof of claim filed herein on or about March 29, 2006, by Broome and Wellington ("B&W"), and designated as Claim No. 1 (the "B&W Proof of Claim"). The B&W Proof of Claim is insufficient and objectionable in, among others, the following respects:

1. The Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (C), and (O), and may be determined by the Court.

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The B&W Proof of Claim does not contain any support whatsoever for its allegation that B&W is owed over $7,000,000.

5. The B&W Proof of Claim does not contain any explanation of why HHI, the named Debtor, is responsible for any claims by B&W.

6. The B&W Proof of Claim does not contain any explanation of how B&W reached the precise amount of $7,018,710.00 as the damages alleged.

7. The B&W Proof of Claim asserts as the "Basis for Claim" that it is a "contract claim," but the B&W Proof of Claim does not contain any contract or even a reference to a contract. Indeed, the B&W Proof of Claim consists of a total of one page, with no attachments. The B&W Proof of Claim therefore fails to comply with the clear requirement in Official Form 10 that the claimant attach copies of the underlying contracts and other documents, or summaries of such documents.

---

[1] Debtors include the following: Homestead Holdings, Inc., The Mounger Corporation, Pacific Trail, Inc., PTI Holding Corp., PTI Top Company, Inc., London Fog Group, Inc., and The Scranton Outlet Corp.

OBJECTION TO BROOME & WELLINGTON
CLAIM - 2
[35981-1100-000000/HHI Objexn to B&W Clm.DOC]

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

8. The B&W Proof of Claim does not have checked the box indicating that the claim includes interest or other charges in addition to the principal amount of the claim. HHI is informed and believes that B&W in fact has included interest and other charges in its claim. No itemized statement of such interest or additional charges is included with the B&W Proof of Claim, despite the clear requirement to such effect in Official Form 10.

9. Under Rule 3001(f), "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." However, for the reasons noted above, the B&W Proof of Claim has not been executed or filed in accordance with the rules, and therefore is not entitled to any such prima facie evidentiary status.

10. HHI is not unaware of the basic agreements that led to the dispute giving rise to the B&W Proof of Claim; prior to filing the petitions herein, HHI and B&W had exchanged correspondence over such claim. However, B&W has never articulated many aspects of its claims, and has never favored HHI with a comprehensive explanation of how it reached the amounts it now claims it is owed. HHI disputes much if not all of what B&W has asserted in those prepetition dealings.

11. HHI is investigating the facts relating to the B&W Proof of Claim and, based on its current understanding of those facts, B&W owes HHI well in excess of $1,000,000 on a net basis. HHI will at the appropriate time prepare a counterclaim against B&W to such effect.

12. In light of the above, HHI respectfully submits that the B&W Proof of Claim and this Objection be treated as a complaint and answer, respectively, and that this claims dispute and counterclaim be treated as an adversary proceeding under Rule 7001, including assignment of an adversary proceeding number.

OBJECTION TO BROOME & WELLINGTON
CLAIM - 3
[35981-1100-000000/HHI Objexn to B&W Clm DOC]

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

WHEREFORE, HHI respectfully requests that the Court enter an Order dismissing the B&W Proof of Claim with prejudice, granting HHI an affirmative judgment against B&W in accordance with proof, and providing HHI with such other and further relief as the Court may deem just and proper.

DATED: April 4, 2006.

**BELDING, HARRIS & PETRONI**

By /s/ Stephen R. Harris
    Stephen R. Harris, Bar No. 1463

**PERKINS COIE LLP**

By /s/ Alan D. Smith
    Alan D. Smith, WSBA #24964
    Brian A. Jennings, WSBA #32509
    Justin L. Moon, WSBA #36981

Attorneys for Debtors and Debtors in Possession

OBJECTION TO BROOME & WELLINGTON
CLAIM - 4
[35981-1100-000000/HHI Objexn to B&W Clm.DOC]

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000